

October 19, 2020

Bankruptcy Judge Kimberly H. Tyson:

20OCT 20 12:44PM

Statute of Limitations:
Known in Civil Law as a prescribed period of time to set a maximum time after an event within which legal proceedings may be initiated.

Fraud: 1 year for actions under 13-8-703g; 3 years under 13-8—101 (1) ( c) if:  20OCT 20 12:44PM
Injury to personal property—3 years 13-8—101(n), if; use or operation of a collection of debt on account: 6 years if contact 13-8—103.05

Inception date for case: 2002

Collection of Rentals (rents) 6 years 13-80-1035 (i) (6)
1. Inception Date of court actions are clearly not allowed, as it is a violation of an established law that is in place.
2. That knowingly and with clear intent, the court violated the Defendant Long's constitutional rights. Under the 14th amendment of the United States Equal Protection Clause.
3. That under the U. S. Constitution 8th Amendment causing cruel and unusual punishment By actions and conduct. (see attached judgments and losses of properties) By proceeding in clear violation of the law, as to the statute of limitations. Period not to exceed the 3 years.
4. That the proceedings were illegal from the beginning through the disposition of the case
5. That, under the Canon Code of Ethics for Attorney's, Mr. Long was never represented with the standards set to effectively repress a client at all stages of the proceedings.
6. Defendant Long has never had his day in court. Based on biased judge, H. Ross Buchanan, (see statement of judge, unclean hands at the inception of case).
7. The Trial Court failed to protect the defendant Mr. Long at every state of the case before the court.
8. Mr. Long's Attorney Robert Abrams colluded with the opposing attorney R. Bret Beattie causing a conflict of interest between Mr. Long and his Attorney Robert Abrams (see attached copy of memo.
9. The trial court judge did not allow examination and inspection of documents presented that would have been exculpatory evidence to support Mr. Long's defense.
10. That through action of Mr. Long's Attorney Robert Abrams, by last minute threats right before trial Attorney Robert Abrams did in fact send a memo to Mr. Long' stating that unless he brought him additional monies in the form of two checks $2,500 each and an additional amount, he would not proceed and would quit the case.
11. Then Attorney Abrams, had a memo transmitted to the opposing attorney stating that he would withdraw from the case and that he would not have representation (see memo).

12. That because of the ill-representation of Attorney Abrams, Defendant Long's loss of $32,800.00 would have gone to Defendant Long.

Substantive Charge: Fraud: found not guilty. Dismissed with Prejudice by Court.

Elements not met for other charges that Defendant was found guilty of. No Factual Basis was ever presented to support the Charges of Theft, Civil Fraudulent Concealment, Breach of Fiduciary Duty, Aiding and abetting. No independent evidence was ever presented to support the charges and convictions of the other charges. (See attachments in support)

Signed by Defendant

_____   Date __10-19-20__

DATED this the __19__ day of __October__, 2020

_____
Signature of Debtor

SWORN to and subscribed before me, this the __19th__ day of __October__, 2020

TRACIE L. PHILLIPS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20034029731
MY COMMISSION EXPIRES SEPTEMBER 5, 2023

_____
NOTARY PUBLIC

DEFENDANT'S EXHIBIT
Pg. #2



Colorado Secretary of State
Date and Time: 08/03/2005 01:03 PM
Entity Id: 19901025928
Document number: 20051295497

Document processing fee
 If document is filed on paper  $125.00
 If document is filed electronically  $ 50.00
Fees & forms/cover sheets
 are subject to change.
To file electronically, access instructions
 for this form/cover sheet and other
 information or print copies of filed
 documents, visit www.sos.state.co.us
 and select Business Center.
Paper documents must be typewritten or machine printed.

ABOVE SPACE FOR OFFICE USE ONLY

## Articles of Amendment
filed pursuant to §7-90-301, et seq. and §7-110-106 of the Colorado Revised Statutes (C.R.S.)

ID number: 19901025928

1. Entity name:

   **R & L INVESTMENTS CORPORATION**
   *(If changing the name of the corporation, indicate name BEFORE the name change)*

2. New Entity name:
   (if applicable)

   **ROD'S CARS, INC.**

3. Use of Restricted Words *(if any of these terms are contained in an entity name, true name of an entity, trade name or trademark stated in this document, mark the applicable box):*
   ☐ "bank" or "trust" or any derivative thereof
   ☐ "credit union"   ☐ "savings and loan"
   ☐ "insurance", "casualty", "mutual", or "surety"

4. Other amendments, if any, are attached.

5. If the amendment provides for an exchange, reclassification or cancellation of issued shares, the attachment states the provisions for implementing the amendment.

6. If the corporation's period of duration as amended is less than perpetual, state the date on which the period of duration expires: _____
   *(mm/dd/yyyy)*

   **OR**

   If the corporation's period of duration as amended is perpetual, mark this box:  ☑

   DEFENDANT'S EXHIBIT
   Pg # 1

7. *(Optional)* Delayed effective date: _____
   *(mm/dd/yyyy)*

Notice:

Causing this document to be delivered to the secretary of state for filing shall constitute the affirmation or acknowledgment of each individual causing such delivery, under penalties of perjury, that the document is the individual's act and deed, or that the individual in good faith believes the document is the act and deed of the person on whose behalf the individual is causing the document to be delivered for filing, taken in conformity

with the requirements of part 3 of article 90 of title 7, C.R.S., the constituent documents, and the organic statutes, and that the individual in good faith believes the facts stated in the document are true and the document complies with the requirements of that Part, the constituent documents, and the organic statutes.

This perjury notice applies to each individual who causes this document to be delivered to the secretary of state, whether or not such individual is named in the document as one who has caused it to be delivered.

8. Name(s) and address(es) of the individual(s) causing the document to be delivered for filing:

| BISHOP | TRACY | L. | |
|---|---|---|---|
| (Last) | (First) | (Middle) | (Suffix) |

1219 E. 36TH AVENUE
*(Street name and number or Post Office information)*

| DENVER | CO | 80205 |
|---|---|---|
| (City) | (State) | (Postal/Zip Code) |

United States

*(Province – if applicable)*  *(Country – if not US)*

*(The document need not state the true name and address of more than one individual. However, if you wish to state the name and address of any additional individuals causing the document to be delivered for filing, mark this box ☐ and include an attachment stating the name and address of such individuals.)*

**Disclaimer:**

This form, and any related instructions, are not intended to provide legal, business or tax advice, and are offered as a public service without representation or warranty. While this form is believed to satisfy minimum legal requirements as of its revision date, compliance with applicable law, as the same may be amended from time to time, remains the responsibility of the user of this form. Questions should be addressed to the user's attorney.



DEFENDANT'S EXHIBIT
Pg # 2

The insurance carrier providing the insurance shall be qualified to write Property Insurance in Colorado and shall be chosen by Borrower subject to Lender's right to reject the chosen carrier for reasonable cause. All insurance policies and renewals thereof shall include a standard mortgage clause in favor of Lender, and shall provide that the insurance carrier shall notify Lender at least ten (10) days before cancellation, termination or any material change of coverage. Insurance policies shall be furnished to Lender at or before closing. Lender shall have the right to hold the policies and renewals thereof. Lender may make proof of loss if not made promptly by Borrower.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.

Insurance proceeds shall be applied to restoration or repair of the Property damaged, provided such restoration or repair is economically feasible and the security of this Deed of Trust is not thereby impaired. If such restoration or repair is not economically feasible or if the security of this Deed of Trust would be impaired, the insurance proceeds shall be applied to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower. If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is given in accordance with paragraph 16 (Notice) by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

Any such application of proceeds to principal shall not extend or postpone the due date of the installments referred to in paragraphs 4 (Payment of Principal and Interest) and 23 (Escrow Funds for Taxes and Insurance) or change the amount of such installments. Notwithstanding anything herein to the contrary, if under paragraph 18 (Acceleration; Foreclosure; Other Remedies) the Property is acquired by Lender, all right, title and interest of Borrower in and to any insurance policies and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trust immediately prior to such sale or acquisition.

All of the rights of Borrower and Lender hereunder with respect to insurance carriers, insurance policies and insurance proceeds are subject to the rights of any holder of a prior deed of trust with respect to said insurance carriers, policies and proceeds.

**8. Preservation and Maintenance of Property.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. Borrower shall perform all of Borrower's obligations under any declarations, covenants, by-laws, rules, or other documents governing the use, ownership or occupancy of the Property.

**9. Protection of Lender's Security.** Except when Borrower has exercised Borrower's rights under paragraph 6 above, if the Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if a default occurs in a prior lien, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, with notice to Borrower if required by law, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to:

(a) any general or special taxes or ditch or water assessments levied or accruing against the Property;
(b) the premiums on any insurance necessary to protect any improvements comprising a part of the Property;
(c) sums due on any prior lien or encumbrance on the Property;
(d) if the Property is a leasehold or is subject to a lease, all sums due under such lease;
(e) the reasonable costs and expenses of defending, protecting, and maintaining the Property and Lender's interest in the Property, including repair and maintenance costs and expenses, costs and expenses of protecting and securing the Property, receiver's fees and expenses, inspection fees, appraisal fees, court costs, attorney fees and costs, and fees and costs of an attorney in the employment of the Lender or holder of the certificate of purchase;
(f) all other costs and expenses allowable by the evidence of debt or this Deed of Trust, and
(g) such other costs and expenses which may be authorized by a court of competent jurisdiction.

Borrower hereby assigns to Lender any right Borrower may have by reason of any prior encumbrance on the Property or by law or otherwise to cure any default under said prior encumbrance.

Any amounts disbursed by Lender pursuant to this paragraph 9, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust. Such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof, and Lender may bring suit to collect any amounts so disbursed plus interest specified in paragraph 2B (Note; Other Obligations Secured). Nothing contained in this paragraph 9 shall require Lender to incur any expense or take any action hereunder.

**10. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**11. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender as herein provided. However, all of the rights of Borrower and Lender hereunder with respect to such proceeds are subject to the rights of any holder of a prior deed of trust.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower. In the event of a partial taking of the Property, the proceeds remaining after taking out any part of the award due any prior lien holder (net award) shall be divided between Lender and Borrower, in the same ratio as the amount of the sums secured by this Deed of Trust immediately prior to the date of taking bears to Borrower's equity in the Property immediately prior to the date of taking. Borrower's equity in the Property means the fair market value of the Property less the amount of sums secured by both this Deed of Trust and all prior liens (except taxes) that are to receive any of the award, all at the value immediately prior to the date of taking.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date such notice is given, Lender is authorized to collect and apply the proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

Any such application of proceeds to principal shall not extend or postpone the due date of the installments referred to in paragraphs 4 (Payment of Principal and Interest) and 23 (Escrow Funds for Taxes and Insurance) nor change the amount of such installments.

**12. Borrower Not Released.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower, nor Borrower's successors in interest, from the original terms of this Deed of Trust. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower nor Borrower's successors in interest.

**13. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by law, shall not be a waiver or preclude the exercise of any such right or remedy.

**14. Remedies Cumulative.** Each remedy provided in the Note and this Deed of Trust is distinct from and cumulative to all other rights or remedies under the Note and this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**15. Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 24 (Transfer of the Property; Assumption). All covenants and agreements of Borrower shall be joint and several. The captions and headings of the paragraphs in this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof.

**16. Notice.** Except for any notice required by law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be in writing and shall be given and be effective upon (1) delivery to Borrower or (2) mailing such notice by first-class U.S. mail, addressed to Borrower at

Page 2 of 4  Initial ___

No TD73-7-96.
This form produced by: *Formulator* for Windows® 800-336-1027



2016-CV-32568
Exhibit 31 - 2/4

Borrower's address stated herein or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be in writing and shall be given and be effective upon (1) delivery to Lender or (2) mailing such notice by first-class U. S. mail, to Lender's address shall be deemed to have been given to Borrower or Lender when given in any manner designated herein.

17. **Governing Law; Severability.** The Note and this Deed of Trust shall be governed by the law of Colorado. In the event that any provision or clause of this Deed of Trust or the Note conflicts with the law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust and Note are declared to be severable.

18. **Acceleration; Foreclosure; Other Remedies.** Except as provided in paragraph 24 (Transfer of the Property; Assumption), upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, or upon any default in a prior lien upon the Property, (unless Borrower has exercised Borrower's rights under paragraph 6 above), at Lender's option, all of the sums secured by this Deed of Trust shall be immediately due and payable (Acceleration). To exercise this option, Lender may invoke the power of sale and any other remedies permitted by law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this Deed of Trust, including, but not limited to, reasonable attorney's fees.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of such election. Trustee shall give such notice to Borrower of Borrower's rights as is provided by law. Trustee shall record a copy of such notice as required by law. Trustee shall advertise the time and place of the sale of the Property, for not less than four weeks in a newspaper of general circulation in each county in which the Property is situated, and shall mail copies of such notice of sale to Borrower and other persons as prescribed by law. After the lapse of such time as may be required by law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place (which may be on the Property or any part thereof as permitted by law) in one or more parcels as Trustee may think best and in such order as Trustee may determine. Lender or Lender's designee may purchase the Property at any sale. It shall not be obligatory upon the purchaser at any such sale to see to the application of the purchase money.

Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

19. **Borrower's Right to Cure Default.** Whenever foreclosure is commenced for nonpayment of any sums due hereunder, the owners of the Property or parties liable hereon shall be entitled to cure said defaults by paying all delinquent principal and interest payments due as of the date of cure, costs, expenses, late charges, attorney's fees and other fees all in the manner provided by law. Upon such payment, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as though no Acceleration had occurred, and the foreclosure proceedings shall be discontinued.

20. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property; however, Borrower shall, prior to Acceleration under paragraph 18 (Acceleration; Foreclosure; Other Remedies) or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Lender or the holder of the Trustee's certificate of purchase shall be entitled to a receiver for the Property after Acceleration under paragraph 18 (Acceleration; Foreclosure; Other Remedies), and shall also be so entitled during the time covered by foreclosure proceedings and the period of redemption, if any; and shall be entitled thereto as a matter of right without regard to the solvency or insolvency of Borrower or of the then owner of the Property, and without regard to the value thereof. Such receiver may be appointed by any Court of competent jurisdiction upon ex parte application and without notice—notice being hereby expressly waived.

Upon Acceleration under paragraph 18 (Acceleration; Foreclosure; Other Remedies) or abandonment of the Property, Lender, in person, by agent or by judicially-appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by Lender or the receiver shall be applied, first, to payment of the costs of preservation and management of the Property, second, to payments due upon prior liens, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

21. **Release.** Upon payment of all sums secured by this Deed of Trust, Lender shall cause Trustee to release this Deed of Trust and shall produce for Trustee the Note. Borrower shall pay all costs of recordation and shall pay the statutory Trustee's fees. If Lender shall not produce the Note as aforesaid, then Lender, upon notice in accordance with paragraph 16 (Notice) from Borrower to Lender, shall obtain, at Lender's expense, and file any lost instrument bond required by Trustee or pay the cost thereof to effect the release of this Deed of Trust.

22. **Waiver of Exemptions.** Borrower hereby waives all right of homestead and any other exemption in the Property under state or federal law presently existing or hereafter enacted.

23. **Escrow Funds for Taxes and Insurance.** This paragraph 23 is not applicable if Funds as defined below are being paid pursuant to a prior encumbrance. Subject to applicable law, Borrower shall pay to Lender, on each day installments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein referred to as "Funds") equal to _____ of the yearly taxes and assessments which may attain priority over this Deed of Trust, plus _____ of yearly premium installments for Property Insurance, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof, taking into account any excess Funds not used or shortages.

The principal of the Funds shall be held in a separate account by the Lender in trust for the benefit of the Borrower and deposited in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency. Lender shall apply the Funds to pay said taxes, assessments and insurance premiums. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills. Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments and insurance premiums as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency within 30 days from the date notice is given in accordance with paragraph 16 (Notice) by Lender to Borrower requesting payment thereof. Provided however, if the loan secured by this Deed of Trust is subject to RESPA or other laws regulating Escrow Accounts, such deficiency, surplus or any other required adjustment shall be paid, credited or adjusted in compliance with such applicable laws.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall simultaneously refund to Borrower any Funds held by Lender. If under paragraph 18 (Acceleration; Foreclosure; Other Remedies) the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, whichever occurs first, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

24. **Transfer of the Property; Assumption.** The following events shall be referred to herein as a "Transfer": (i) a transfer or conveyance of title (or any portion thereof, legal or equitable) of the Property (or any part thereof or interest therein), (ii) the execution of a contract or agreement creating a right to title (or any portion thereof, legal or equitable) in the Property (or any part thereof or interest therein), (iii) or an agreement granting a possessory right in the Property (or any portion thereof), in excess of three (3) years, (iv) a sale or transfer of, or the execution of a contract or agreement creating a right to acquire or receive, more than fifty percent (50%) of the controlling interest or more than fifty percent (50%) of the beneficial interest in the Borrower, (v) the reorganization, liquidation or dissolution of the Borrower. Not to be included as a Transfer are (i) the creation of a lien or encumbrance subordinate to this Deed of Trust, (ii) the creation of a purchase money security interest for household appliances, or (iii) a transfer by devise, descent or by operation of the law upon the death of a joint tenant. At the election of Lender, in the event of each and every transfer:

No. TD73-7-96.
This form produced by: Formulator for Windows 800-336-1027

DEFENDANT'S EXHIBIT
Pg #2

Page 3 of 4  Initial

2016-CV-32568
Exhibit 31 - 3/4

(a) Borrower shall, upon Lender's request, submit information required to enable Lender to evaluate the creditworthiness of the person ("Transferee") who is, or is to be, the recipient of a Transfer, as if a new loan were being made to Transferee. If Transferee is reasonably determined by the Lender to be financially incapable of retiring the indebtedness according to its terms, based upon standards, normally used by persons in the business of making loans on real estate in the same or similar circumstances, then all sums secured by this Deed of Trust shall become immediately due and payable ("Acceleration").

(b) If Lender exercises such option to Accelerate, Lender shall give Borrower notice of Acceleration in accordance with paragraph 16 (Notice). The notice shall inform Borrower of the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to Acceleration and sale. Such notice shall also provide a period of not less than 10 days from the date the notice is given within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 (Acceleration; Foreclosure; Other Remedies). Lender shall give notice of such Acceleration, within thirty (30) days after notice of any Transfer is given to Lender by Borrower or Transferee in accordance with paragraph 16 (Notice). If Lender shall not give notice of such Acceleration within such thirty (30) days, then Lender will have no further right to such Acceleration.

(c) If a Transfer occurs and should Lender not exercise Lender's option pursuant to this paragraph 24 to Accelerate, Transferee shall be deemed to have assumed all of the obligations of Borrower under this Deed of Trust including all sums secured hereby whether or not the instrument evidencing such conveyance, contract or grant expressly so provides. This covenant shall run with the Property and remain in full force and effect until said sums are paid in full. The Lender may without notice to the Borrower deal with Transferee in the same manner as with the Borrower with reference to said sums including the payment or credit to Transferee of undisbursed reserve Funds on payment in full of said sums, without in any way altering or discharging the Borrower's liability hereunder for the obligations hereby secured.

(d) Should Lender not elect to Accelerate upon the occurrence of such Transfer then, subject to (b) above, the mere fact of a lapse of time or the acceptance of payment subsequent to any of such events, whether or not Lender had actual or constructive notice of such Transfer, shall not be deemed a waiver of Lender's right to make such election nor shall Lender be estopped therefrom by virtue thereof. The issuance on behalf of the Lender of a routine statement showing the status of the loan, whether or not Lender had actual or constructive notice of such Transfer, shall not be a waiver or estoppel of Lender's said rights.

25. **Borrower's Copy.** Borrower acknowledges receipt of a copy of the Note and this Deed of Trust.

EXECUTED BY BORROWER.

IF BORROWER IS NATURAL PERSON(s):
X _Christal R. Smith_

doing business as _____

IF BORROWER IS CORPORATION:

ATTEST: _____

Name of Corporation _____

By _____

Secretary                                    President

(SEAL)

IF BORROWER IS PARTNERSHIP:

Name of Partnership _____

By _____

A General Partner

STATE OF COLORADO
                                    ss.
_City of Denver_ County of _Denver_

The foregoing instrument was acknowledged before me this _7th_ day of _May_ _2002_.

by* _____

Witness my hand and official seal.
My commission expires: _06/08/03_

Notary Public
1330 Leyden St #102 Denver Co 80220
Address

*If a natural person or persons, insert the name(s) of such person(s). If a corporation, insert, for example, "John Doe as President and Jane Doe as Secretary of Doe & Co., a Colorado corporation." If a partnership, insert, for example, "Sam Smith as general partner in and for Smith & Smith, a general partnership."

No. TD73-7-96. Page 4 of 4
This form produced by: _____ 800-330-9027

**DEFENDANT'S EXHIBIT**
Pg#3



Rodney Long <rodneylong866@gmail.com>

---

## Rodney A. Long Case#16CV32568
7 messages

---

**Rodney Long** <rodneylong866@gmail.com>            Mon, Dec 10, 2018 at 2:27 PM
To: Robert Abrams <robert@abramslaw.net>, Paralegal <plegal@abramslaw.net>, jenn.abramslaw@gmail.com, neil@abramslaw.net
Bcc: jamesdarnel@comcast.net

Mr. Abrams'

I was recently forwarded your e-mail from your paralegal Mike, regarding your most recent threat to withdraw from my case without adhering to the Judge's order that you file a brief on the outstanding legal issues. Robert, as you know from my multiple e-mails and correspondence, I am deeply concerned about the lack of professionalism displayed and understanding of your ethical obligations. Throughout my representation, you have dealt with my concerns with callousness and malfeasance that is professionally reprehensible. Your recent e-mail, whereby you threaten not only to withdraw from my case but completely stop working despite the court's order, is in absolute violation of rules of ethics and professional conduct. During our recent court appearance, it was apparent to the Judge that my case has become unnecessarily challenging, in part due to your incompetence and failure to present case facts and issues in a cogent manner.

You promised me at our hearing on December 5th, that you would work diligently on my matter. You even seemed to see the wisdom in showing me some modicum of respect, despite then seeking to withdraw. At the hearing, we were finally able to communicate on some level to get matters presented to the Court regarding proper resolution. Even though I have paid you substantial funds to date, our disagreement on your reasonable and appropriate fees should not justify failure to complete court ordered filings. The basis for you to properly follow the judge's orders is in my best interest, and your ethical responsibility.

Therefore, I am expecting you to file a well-researched and legally appropriate brief grounded in relevant facts and law on or before December 15th, 2018. Whether or not you shall seek to file another motion to withdraw, I expect you to abide by all the Court's orders until any withdrawal is granted, and do not go against my interest to vacate any scheduled hearing dates. I also expect to meet with you to specifically go over the evidence to be presented, and should you lack the courage and professional fortitude to meet, I expect you to be prepared for the currently scheduled hearing.

In my best interest, any withdrawal should also be combined with an agreement and stipulation between you and Mr. Beattie, that a continuance is agreed upon. In addition, that full and complete compliance with Judge's orders, will be accomplished before any withdrawal is granted.

Lastly, I know that we have a dispute regarding your fees. I have given you notice of my concerns about the integrity of your billing, which we can address upon your withdrawal being granted. However, I will not discuss the billing issues under your inappropriate threat to harm my case. I look forward to hearing from you at your earliest convenience and I hope that you have already begun to comply with the Judge's orders.

Best Regards,

Rodney A. Long

**DEFENDANT'S EXHIBIT**

---

**Robert Abrams** <robert@abramslaw.net>            Mon, Dec 10, 2018 at 3:15 PM
To: Rodney Long <rodneylong866@gmail.com>, Paralegal <plegal@abramslaw.net>, jenn.abramslaw@gmail.com, neil@abramslaw.net

Hello:

Rodney, I can tell you did not write this letter. As such, I shall not respond to avoid an attorney client privilege issue. We're withdrawing from your case today, will not be filing any motions for you b/c we have no evidence your Biscay lien is real. We will



2018 DEC 13 PM 3: 10

December 13, 2018

The Honorable Ross B.H. Buchanan

Denver District Court Judge

1437 Bannock Street, Courtroom #275

Denver, CO 80202

                Re: Case Number 16CV32568; Smith, Cherise v. Long, Rodney ET AL

Dear Judge Buchanan:

    I am begging for mercy in your decision because my legal counsel; Attorney Robert Abrams perjured himself when he stated that he did not receive any documents from me in reference to this case. Not only did I forward the documentation of cancelled money orders, via email to Mr. Abrams on December 05, 2018 (see attached). I also informed him in court, in person after the hearing on December 05, 2018; that I would be a witness and testifying at the upcoming hearing in January 2019.

Mr. Abrams intentionally mislead the judge and the courts and falsified and withheld information from the courts. I am in the process of filing a grievance against his license and his law firm for his actions.

Judge you even noticed in court that Mr. Abrams admitted never even reviewing any of the previous counsel's trial documents that were sent to his office. Mr. Abrams would never even meet with me to prepare for this hearing/case. Attached is the correspondence proving that Mr. Abrams not only received the documents needed for the hearing in a timely manner; but that his law firm refused to forward them to you as requested by the courts which resulted in your decision against me.

Signed.

*[signature]*

Rodney A. Long

DEFENDANT'S EXHIBIT

06/24/2019 03:13 PM     R $58.00     D $0.00
City & County of Denver     JUD
Electronically Recorded

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br><br>Court Address:<br>1437 Bannock St., Denver, CO 80202 | DATE FILED: December 12, 2018 2:23 PM |
| Plaintiff,<br>**CHERISE SMITH**<br><br>v.<br><br>Defendants,<br>**RODNEY LONG ET AL** | ▲ COURT USE ONLY ▲<br><br>Case Number: 16CV32568<br><br>Ctrm: 275 |
| **TRIAL MINUTES, ORDERS ON POST-TRIAL MOTIONS, AND JUDGMENT** | |

     THIS MATTER came before the court for a jury trial December 11-15, 2017. Plaintiff Cherise Smith was represented by R. Bret Beattie. Defendants Rodney Long, Long's Properties, LLC, R & L Investments Corp., Rod's Cars Inc., and Rod's Place Inc. were represented by James Halpin and Dustin Klein. A jury of seven members was selected, including one alternate, and the parties stipulated that the alternate would deliberate. Thus, seven jurors deliberated.

## I.     TRIAL MINUTES

     The court heard the testimony of the following witnesses: Cherise Smith, Rodney Long, Robert Johnson, and Darnell Sykes. The court admitted the following exhibits: 1-69, and 75.

     After hearing the evidence, and being instructed on the law, the jury deliberated and returned VERDICT FORM 1: FRAUD IN THE INDUCEMENT, with Part B thereof completed and signed, indicating a verdict in favor of Defendant Rodney Long and against Plaintiff on that claim; VERDICT FORM 2: BREACH OF THE FIDUCIARY DUTY BY LONG, with Part A thereof completed and signed, indicating a verdict in favor of Plaintiff and against Defendant Rodney Long on that claim, and awarding economic damages of $37,841 and noneconomic damages of $10,000; VERDICT FORM 3: FRAUDULENT CONCEALMENT, with Part A thereof completed, indicating a verdict in favor of Plaintiff and against Defendant Rodney Long on that claim, and awarding economic damages of $1,401.34 and noneconomic damages of $10,000; VERDICT FORM 4: CIVIL THEFT, with Part A thereof completed, indicating a verdict in favor of Plaintiff and against Defendant Rodney Long on that claim, and awarding damages of $46,206; VERDICT FORM 5: AIDING AND ABETTING, with Part A thereof completed, indicating a verdict in favor of Plaintiff and against Defendants Long Properties LLC, Rod's Place, Inc., and R & L Investments Corp. on that claim, and awarding economic damages of $0 and noneconomic damages of $10,000; VERDICT FORM 6: PUNITIVE

**DEFENDANT'S EXHIBIT**

1

### IV. CIVIL THEFT CLAIM, PUNITIVE DAMAGES, ATTORNEYS FEES, AND COSTS

On April 2, 2018, Plaintiff filed a Motion for Entry of Judgment for Treble Damages, Attorney Fees and Costs ("Plaintiff's Motion"). Defendants filed their Response thereto on April 23, 2018, and Plaintiff filed her Reply on April 30, 2018. The court heard additional argument on this Motion at the hearing on August 22, 2018. The court will discuss each of the aspects of the final judgment requested in Plaintiff's Motion sequentially.

#### A. Civil Theft Claim

Plaintiff requests that the jury's verdict reflected on VERDICT FORM 4: CIVIL THEFT in the amount of $46,206 be trebled, and that she be awarded attorney fees and costs.

Pursuant to C.R.S. §18-4-405, in an action for civil theft, the owner "may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorneys fees." The trebling of the actual damages is mandatory under the civil theft statute. *In Re Krupka,* 317 B.R. 432, 439 (Bankr. D. Colo. 2004) ("Because the language used speaks in terms of what the owner may recover as opposed to what the court may award, this Court does not believe that the statutory language supports the argument that discretion lies with the trial court to either award treble damages or not as it may deem appropriate."); *In Re Powell,* 2008 WL 4489179 at *4 (D. Colo. 2008)("As the Colorado legislature has determined that a victim of theft is entitled to treble damages without specifically providing discretionary authority to the courts, I conclude that it is inappropriate for a court to use its discretion in awarding treble damages to a victim covered by the statute."). *See also, Steward Software Co., LLC v. Kopcho,* 275 P.3d 702, 712-713 (Colo. App. 2010)(Gabriel, J) (relying on *Krupka* and *Powell, supra,* and the parallel statutory language pertaining to attorney fees and costs in concluding that an award of reasonable attorney fees is also mandatory under the civil theft statute) *rev'd on other grounds,* 266 P.3d 1085 (Colo. 2011). Accordingly, by operation of the statute, judgment shall enter in favor of Plaintiff Smith and against Defendant Long in an amount which is three times the amount of actual damages, or $138,618.00.

#### B. Punitive Damages

Plaintiff requests that the court enter judgment on VERDICT FORM 6: PUNITIVE DAMAGES in the amount of $35,000. At the hearing on August 22, 2018, Defendants argued that the court should not treble the damages found by the jury on VERDICT FORM 4: CIVIL THEFT, because it is essentially duplicative of the punitive damage award.

Both the punitive damages statute and the civil theft statute serve punitive purposes. *Frick v. Abell,* 602 P.2d 852, 85 (Colo.1979)(" The purpose for the award of exemplary damages is to punish the wrongdoer as an example to others," citing *Ark. Valley Alfalfa Mills, Inc. v. Day,* 128 Colo. 436, 263 P.2d 815 (1953)); *People v. Adams,* 243 P.3d 256, 264 (Colo. 2010)("Several courts have accordingly held that claims under section 18-4-405 were intended to

3

DEFENDANT'S EXHIBIT

or downwards by consideration of the factors set forth in Rule 1.5(a) of the Colorado Rules of Professional Conduct. *Spensieri, supra,* 804 P.2d at 270-271. Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

The procedural history of the Plaintiff's request for attorney fees and costs in this matter has been convoluted, to say the least. In her Motion, Plaintiff sought an award of attorney fees in the total amount of $117,240.38. In support of that request, Plaintiff submitted the Affidavit of R. Bret Beattie as Exhibit A to her Motion, to which Mr. Beattie attached a 22-page ledger itemizing the attorney fees incurred and costs expended on Plaintiff's behalf in preparing and trying this matter. In their Response to Plaintiff's Motion, filed April 23, 2018, Defendants contended that Plaintiff's counsel's billing records were "inflated and woefully deficient," "unsupported by Plaintiffs counsel's affidavit," and that the "supporting documentation is insufficient to support the time spent." Response, at 2. Defendants also noted that the Plaintiff had not submitted receipts or invoices supporting her request for costs. *Id.* However, the Response nowhere contested any specific entries in Plaintiff's counsel's itemization, but rather requested a hearing on attorney fees and costs.

Accordingly, the matter was scheduled for a hearing on June 11, 2018. However, on May 24, 2018, Defendants filed an Unopposed Motion to Vacate Hearing on Plaintiffs Attorney Fees and Costs, which the court granted and vacated the hearing. Then, on June 15, 2018, Defendants filed a Motion for Leave to File Motion to Amend Defendant's Response to Plaintiff's Motion for Attorney Fees, requesting leave to supplement its Response, and arguing that Plaintiff's award of attorney fees should be limited by the fact that the jury returned a verdict in Defendant's favor on Plaintiff's claim for fraud in the inducement, and that only the civil theft claim provides for an attorney fee award. Again, however, Defendants nowhere contested specific entries on the itemization of attorney

5

DEFENDANT'S EXHIBIT
Pg # 2

Order: ETCC
Doc: 2019-80862 ODN 06-24-2019
Page 30 of 41
Requested By: Julie Brennan , Printed: 4/23/2020 5:25 PM

2002087751 2002/05/13 15:20:28 1/ 4 DOT
DENVER COUNTY CLERK AND RECORDER 20.00 .00 SMP

The printed portions of this form have been approved by the Colorado Real Estate Commission. (TD73-7-95)

IF THIS FORM IS USED IN A CONSUMER CREDIT TRANSACTION, CONSULT LEGAL COUNSEL. THIS IS A LEGAL INSTRUMENT. IF NOT UNDERSTOOD, LEGAL, TAX OR OTHER COUNSEL SHOULD BE CONSULTED BEFORE SIGNING.

# DEED OF TRUST

THIS DEED OF TRUST is made this **13th.** day of **May 2002**, between **Cherise R. Smith** (Borrower), whose address is **4243 Flanders St., Denver, Co. 80249**, and the Public Trustee of the County in which the Property (see paragraph 1) is situated (Trustee); for the benefit of **R and L Investments** (Lender), whose address is **2823 Vine St., Denver, Co. 80205**.

Borrower and Lender covenant and agree as follows:

1. **Property in Trust.** Borrower, in consideration of the indebtedness herein recited and the trust herein created, hereby grants and conveys to Trustee in trust, with power of sale, the following described property located in the **City of Aurora**, County of **Adams**, State of Colorado: **Lot 10 Blk. 3 Haven Ac. Flg # 1 Parcel #182134321005**

which has the address of **1613 Biscay Circle, Aurora, Co. 80010** (Property Address),
together with all its appurtenances (Property).

2. **Note; Other Obligations Secured.** This Deed of Trust is given to secure to Lender:
A. the repayment of the indebtedness evidenced by Borrower's note (Note) dated **June 13, 2002**, in the principal sum of **$32,853.32** U.S. Dollars, with interest on the unpaid principal balance from **July 1, 2002**, until paid, at the rate of **8** percent per annum, with principal and interest payable at **2823 Vine St., DEnver, Co. 80205** or such other place as the Lender may designate, in **Monthly** payments of **$464.41** Dollars (U.S. $_____) due on the **1st.** day of each **month** beginning **July 1, 2002** such payments to continue until the entire indebtedness evidenced by said Note is fully paid; however, if not sooner paid, the entire principal amount outstanding and accrued interest thereon, shall be due and payable on **August 1 2010**;

and Borrower is to pay to Lender a late charge of **8** % of any payment not received by the Lender within **10** days after payment is due; and Borrower has the right to prepay the principal amount outstanding under said Note, in whole or in part, at any time without penalty except

B. the payment of all other sums with interest thereon at **18** % per annum, disbursed by Lender in accordance with this Deed of Trust to protect the security of this Deed of Trust; and
C. the performance of the covenants and agreements of Borrower herein contained.

3. **Title.** Borrower covenants that Borrower owns and has the right to grant and convey the Property, and warrants title to the same, subject to general real estate taxes for the current year, easements of record or in existence, and recorded declarations, restrictions, reservations and covenants, if any, as of this date and except

4. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, and late charges as provided in the Note and shall perform all of Borrower's other covenants contained in the Note.

5. **Application of Payments.** All payments received by Lender under the terms hereof shall be applied by Lender first in payment of amounts due pursuant to paragraph 23 (Escrow Funds for Taxes and Insurance), then to amounts disbursed by Lender pursuant to paragraph 9 (Protection of Lender's Security), and the balance in accordance with the terms and conditions of the Note.

6. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any prior deed of trust and any other prior liens. Borrower shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may have or attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any, in the manner set out in paragraph 23 (Escrow Funds for Taxes and Insurance) or, if not required to be paid in such manner, by Borrower making payment when due, directly to the payee thereof. Despite the foregoing, Borrower shall not be required to make payments otherwise required by this paragraph if Borrower, after notice to Lender, shall in good faith contest such obligation by, or defend enforcement of such obligation in, legal proceedings which operate to prevent the enforcement of the obligation or forfeiture of the Property or any part thereof, only upon Borrower making all such contested payments and other payments as ordered by the court to the registry of the court in which such proceedings are filed.

7. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire or hazards included within the term "extended coverage" in an amount at least equal to the lesser of (1) the insurable value of the Property or (2) an amount sufficient to pay the sums secured by this Deed of Trust as well as any prior encumbrances on the Property. All of the foregoing shall be known as "Property Insurance".

No. TD73-7-95. DEED OF TRUST (Due on Transfer — Creditworthy Restriction) Page 1 of 4
This form produced by: _____

DEFENDANT'S EXHIBIT

2016-CV-32568
Exhibit 31 - 1/4

700 17th St. Suite 650

Denver, CO 80202

(303) 322-4115

E-mail: Robert@Abramslaw.net

www.AbramsLaw.net

---

The information contained in this e-mail message is attorney-client privileged and confidential intended only for the individual or entity named above. If you are not the intended recipient, you are hereby notified any dissemination, distribution, copying or other use of this communication is strictly prohibited. If you have received this communication in error, please notify our office immediately at (303) 322-4115 and delete this message. Thank You. Abrams & Associates, LLC.

**From:** Rodney Long [mailto:rodneylong866@gmail.com]
**Sent:** Friday, September 21, 2018 6:21 AM
**To:** Robert Abrams
**Subject:** Smith&long

Robert I need to meet I am not feeling good about my case anytime I talk to you I am rush off I fill you have not took the time to learn about my case and don't know what's going on every time will talk you looking at the time and tell me you have to run that why I lost the first time I came to you because they told me you was good so far you just not Interested In my case You make me feel that I'm wasting your time I would like to meet with you soon as possible I do not want to happen to me again what happened to me the 1st time Can you Have your paralegal set up an appointment I just had to feel in my heart Your firm has my best interests So far I'm not feeling it


DEFENDANT'S EXHIBIT

or downwards by consideration of the factors set forth in Rule 1.5(a) of the Colorado Rules of Professional Conduct. *Spensieri, supra,* 804 P.2d at 270-271. Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

The procedural history of the Plaintiff's request for attorney fees and costs in this matter has been convoluted, to say the least. In her Motion, Plaintiff sought an award of attorney fees in the total amount of $117,240.38. In support of that request, Plaintiff submitted the Affidavit of R. Bret Beattie as Exhibit A to her Motion, to which Mr. Beattie attached a 22-page ledger itemizing the attorney fees incurred and costs expended on Plaintiff's behalf in preparing and trying this matter. In their Response to Plaintiff's Motion, filed April 23, 2018, Defendants contended that Plaintiff's counsel's billing records were "inflated and woefully deficient," "unsupported by Plaintiffs counsel's affidavit," and that the "supporting documentation is insufficient to support the time spent." Response, at 2. Defendants also noted that the Plaintiff had not submitted receipts or invoices supporting her request for costs. *Id.* However, the Response nowhere contested any specific entries in Plaintiff's counsel's itemization, but rather requested a hearing on attorney fees and costs.

Accordingly, the matter was scheduled for a hearing on June 11, 2018. However, on May 24, 2018, Defendants filed an Unopposed Motion to Vacate Hearing on Plaintiffs Attorney Fees and Costs, which the court granted and vacated the hearing. Then, on June 15, 2018, Defendants filed a Motion for Leave to File Motion to Amend Defendant's Response to Plaintiff's Motion for Attorney Fees, requesting leave to supplement its Response, and arguing that Plaintiff's award of attorney fees should be limited by the fact that the jury returned a verdict in Defendant's favor on Plaintiff's claim for fraud in the inducement, and that only the civil theft claim provides for an attorney fee award. Again, however, Defendants nowhere contested specific entries on the itemization of attorney

5

**DEFENDANT'S EXHIBIT**

 Gmail

Rodney Long <rodneylong866@gmail.com>

---

## Rodney A. Long Case#16CV32568

**Rodney Long** <rodneylong866@gmail.com>  Tue, Dec 11, 2018 at 12:01 PM
To: Robert Abrams <robert@abramslaw.net>
Cc: Paralegal <plegal@abramslaw.net>, jenn.abramslaw@gmail.com, neil@abramslaw.net
Bcc: jamesdarnel@comcast.net, Tracie Phillips <traciephillips45@gmail.com>

Hello,

Robert, I do not authorize you to withdraw from this case. You have failed to comply with the orders instructed by the judge in the hearing on December 5, 2018. You admitted in court you never even reviewed any of the evidence provided by previous counsel or myself in order to adequately prepare for my appeal and properly defend this case.

I sent you the evidence required by court that supports that the lien in question filed against 1613 Biscay was properly and legally secured via email on the evening on 12/5/2018 and resent them again 12/20/2018. Your office has acknowledged the receipt of money orders and notarized contracts; which were all located in the evidence boxes that you and your staff failed to review when preparing for my appeal.

You have never taken the time to even meet with me to review the case, or any strategy. It is evident even in court that you are not aware of the circumstances surrounding this case, even the judge pointed that out. I have paid you a substantial amount of money and I am the one who ordered the trial transcripts. How can you possibly prepare for a case without reviewing the transcripts or any evidence?

I expect you to comply with the judges orders and file the appropriate motions and present the evidence I provided you with. You have all the evidence required to move forward with the case and you were paid to do a job and I expect you to fulfill your obligation.

When is a good time for us to meet? I will rearrange my schedule to accommodate you.

Regards,
Rodney Long   *[signature]*

On Mon, Dec 10, 2018, 3:15 PM Robert Abrams <robert@abramslaw.net> wrote:
[Quoted text hidden]



DEFENDANT'S EXHIBIT

**OFFICIAL CHECK**

NO. 483600643

DATE 02242000  OFFICE 00000005  23-391/1020

PAY TO THE ORDER OF: RODNEY LONG

$ ******3,000.00

***Three Thousand and 00/100***

DOLLARS

Drawer: KeyBank
**NON NEGOTIABLE**
AUTHORIZED SIGNATURE

MEMO: RODNEY LONG

Issued By Integrated Payment Systems Inc., Englewood, Colorado
KeyBank National Association, Denver, Colorado

---

**OFFICIAL CHECK**

NO. 483600744

DATE 03272000  OFFICE 00000005  23-391/1020

PAY TO THE ORDER OF: FRENCHIE LACY

$ *****10,700.00

***Ten Thousand Seven Hundred and 00/100***

DOLLARS

Drawer: KeyBank
**NON NEGOTIABLE**
AUTHORIZED SIGNATURE

MEMO: 

Issued By Integrated Payment Systems Inc., Englewood, Colorado
KeyBank National Association, Denver, Colorado

**DEFENDANT'S EXHIBIT**

---

**OFFICIAL CHECK**

NO. 483600745

DATE 03272000  OFFICE 00000005  23-391/1020

PAY TO THE ORDER OF: RODNEY LONG

$ *****16,290.00

***Sixteen Thousand Two Hundred Ninety and 00/100***

DOLLARS

Drawer: KeyBank
**NON NEGOTIABLE**
AUTHORIZED SIGNATURE

MEMO: RODNEY LONG

Issued By Integrated Payment Systems Inc., Englewood, Colorado
KeyBank National Association, Denver, Colorado

2016-CV-32568

# GENERAL AFFIDAVIT

The within named person (Affiant), Virgil Carr, who is a resident of Denver County, State of Colorado, personally came and appeared before me, the undersigned Notary Public, and makes this his/her statement, testimony and General Affidavit under oath or affirmation, in good faith, and under penalty of perjury, of sincere belief and personal knowledge that the following matters, facts, and things set forth are true and correct, to the best of his/her knowledge:

On May 7, 2002, I Virgil Carr, witnessed the following statements of fact by Mrs. Cherise Smith; who came to my office, located at, 1330 Leyden St. Denver, CO. 80220. Mrs. Cherise Smith at the time was not married and was known to me as Miss Cherise Smith, whom I was introduced to previously by a mutual friend, Ms. Mary Lewis.

I vividly remember Mrs. Cherise Smith when she appeared at my office because she was driving a burnt orange BMW car, and wearing brown pants, and a striped sweater that was white and burnt orange and her lipstick matched the color of her car.

The reason Mrs. Cherise Smith came to my office on that date was to sign 2 documents and have them notarized; specifically the documents that were being signed were:

1. Deed of Trust for the property located at, 1613 Biscay Cir. Aurora, CO. 80010; Adams County. In the amount of $32,853.32.

2. Deed of Trust for the property located at, 3122 Marion St. Denver, CO. 80205; Denver County. In the amount of $17,182.89.

Please see the attached documentation, per Colorado State Law Requirements for Licensed Notary's: Notary Log, Government issued ID, and required signature, which further validates the authenticity of my statement.

Dated this 08th day of December, 20 18,

_____
Signature of Affiant

==============================================================================

State of Colorado

County of Denver

Subscribed and sworn to, or affirmed, before me on this 08th day of December, 20 18 by Affiant Virgil Carr.

_____
Signature of Notary Public

09/05/2023
My Commission Expires:

TRACIE L. PHILLIPS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20034029731
MY COMMISSION EXPIRES SEPTEMBER 5, 2023

**DEFENDANT'S EXHIBIT**

# Establishing Grounds for Fraudulent Concealment

A basic fraud claim must establish that the defendant intentionally and materially misrepresented a fact, the purpose of the misrepresentation was to defraud or mislead the plaintiff, the plaintiff reasonably relied on the misrepresentation, and the plaintiff incurred actual damages due to the reliance. With a fraudulent concealment claim, you must prove those elements, and you must also prove that the defendant owed you a duty to disclose material information but failed to disclose it. As with other fraud complaints, a fraudulent concealment complaint needs to include details about what the defendant allegedly did wrong and what was concealed or not disclosed that should have been.

The duty to disclose material information must be based on a special relationship between the plaintiff and the defendant. Occasionally, this type of duty has arisen just from a defendant having superior knowledge to a plaintiff, but usually the context for these cases has been a direct negotiation in a business transaction. For example, if the parties are entering into a business contract, there may be a duty to disclose information. Similarly, business **partners** typically have a fiduciary relationship to each other. Generally, however, if there is no contractual relationship, nor a confidential nor a fiduciary relationship, a court will not allow recovery for fraudulent concealment.

Fraudulent concealment can arise in different situations, but one common situation in which it arises is when a person or entity with a duty to disclose intentionally hides information that is crucial to the other person's decision about whether or not to invest.

When there is no special relationship, there is also no duty to disclose information. This lack of duty means that even when an initial assessment has been provided voluntarily or partially, there may not be a duty to update it with new impressions, even if not doing so could mislead the plaintiff. When the facts at issue are not peculiarly within one party's knowledge, and the other party has the ability to know through ordinary intelligence the truth or real quality of the representation's subject, that party is supposed to use those means to get at the truth. For example, if you could have found out negative facts about an investment on your own, but you simply took an easier route by believing another person or choosing not to look into the facts, your attorney may not be able to claim fraudulent concealment.

https://www.new-york-attorney.org/fraudulent-concealment.html

1/3

**DEFENDANT'S EXHIBIT**



## billing

4 messages

**Robert Abrams** <robert@abramslaw.net>  Wed, Dec 5, 2018 at 1:07 PM
To: Rodney Long <rodneylong866@gmail.com>

Hi Rod:

After today's hearing you owe the firm approx. $4k. it seemed like your wife did not want to pay us anymore, but you said you would. Remember, we bill hourly and if you want us to defend against all of Cherise's lies we need to be paid. We will need, easily $4k more to get us through motions and hearings; so, when you come down tomorrow, bring two checks for $2,500 each and we'll post-date both of them. This is in addt'n to the $2,500 cash. Please advise.

All the best;

Robert Abrams

Attorney at Law


Abrams & Associates, LLC

700 17th St. Suite 650

Denver, CO  80202

(303) 322-4115

E-mail: Robert@Abramslaw.net


www.AbramsLaw.net



DEFENDANT'S EXHIBIT